UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTIAN L. MOORE,

        Plaintiff,

     v.

DNATA US INFLIGHT CATERING LLC, et al.,

        Defendants.

Case No.  20-cv-08028-JD

**ORDER RE REMAND**

Re: Dkt. No. 13

Plaintiff Moore, on behalf of himself and a putative class of current and former employees, sued defendant Dnata US Inflight Catering LLC for a variety of wage and hour claims under California state law.  Dkt. No. 1, Ex. A.  The complaint was originally filed in the San Francisco Superior Court, and was removed by dnata[1] under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), and alternatively on federal question subject matter jurisdiction, 28 U.S.C. §§ 1331, 1441(a).  A federal question is said to arise from the complete preemption of the state law employment claims by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*  Dkt. No. 1.

Moore has asked to remand the case.  Dkt. No. 13.  For CAFA, Moore says that dnata has not reasonably demonstrated that the amount in controversy meets the statutory threshold of $5 million.  *Id*. at 16.  For the federal question theory, he says that the complaint alleges purely state law claims that do not require an interpretation of a collective bargaining agreement (CBA), and so the claims are not preempted or removable.  *Id*. at 11.

---

[1]  Defendants use the lower-case "dnata" in their briefs, and the Court will do the same here.

United States District Court
Northern District of California

The parties' familiarity with the record is assumed.  dnata has not plausibly demonstrated a reasonable possibility that the amount in controversy satisfies the CAFA threshold.  With respect to the alternative theory of a federal question, removal was done improvidently and without subject matter jurisdiction, and the case is remanded to the Superior Court under 28 U.S.C. §§ 1447(c) and (d).

## DISCUSSION

## I.    CAFA REMOVAL

The Court has detailed the standards for CAFA removal in a recent case, and incorporates that discussion here.  *See Anderson v. Starbucks Corp.*, No. 3:20-cv-01178-JD, 2020 WL 7779015, at *2 (N.D. Cal. Dec. 31, 2020) (and cases cited therein).  Moore does not contest the minimum diversity of citizenship required under CAFA, nor does he contend that the putative class is less than 100 individuals.  The complaint alleged a class of "over seventy-five (75) Class Members," Dkt. No. 1, Ex. A ¶ 23, and dnata filed a declaration stating that its payroll records indicated that it employed "at least" 426 non-exempt workers who fit the putative class definition in the pertinent time period, Bhojwani Decl., Dkt. No. 14-1 ¶ 6, a headcount that Moore does not seriously question.  The only disputed issue is whether dnata plausibly demonstrated that the amount in controversy exceeds the $5 million statutory threshold for CAFA jurisdiction.

It did not.  To start, there is no presumption against removal when CAFA jurisdiction is at stake, as Moore seems to suggest.  Dkt. No. 13 at 10; *see Anderson*, 2020 WL 7779015, at *2 (under CAFA, "'no antiremoval presumption applies.'") (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).  To the contrary, Congress intended CAFA to be interpreted expansively in favor of removal.  *Id.* (citing *Arias v. Residence Inn by Marriott*, 936 F.2d 920, 924 (9th Cir. 2019)).

To establish the amount in controversy required for CAFA jurisdiction, a defendant need only "'plausibly show that it is reasonably possible that the potential liability exceeds $5 million.'" *Anderson*, 2020 WL 7779015, at *3 (quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)).  A defendant need not prove the jurisdictional amount with certainty, or make out the plaintiff's case for her.  *Id.* (citing *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir.

2020)).  Nor does the Court need to perform a detailed mathematical analysis to determine whether a defendant's showing is adequate.  *Id*.  "Rather, 'a defendant may rely on reasonable assumptions to prove that it has met the statutory threshold,' and on a 'chain of reasoning that includes assumptions' based on reasonable grounds."  *Id*. at *3 (quoting *Harris*, 980 F.3d at 701, and *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)).  Reasonable grounds may be established on the basis of the complaint and extrinsic evidence.  *Id*.  "'[P]rospective attorney's fees must be included in the assessment of the amount in controversy.'"  *Id*. (quoting *Arias*, 936 F.3d at 922).

A plaintiff need not introduce extrinsic evidence to contest the defendant's estimates.  A plaintiff may rely entirely on "'a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence.'"  *Id*. at *2. (quoting *Harris*, 980 F.3d at 700).  That is what Moore has done here.  He disputes dnata's reasoning, without introducing new evidence of his own.

Although the complaint alleges a variety of claims, dnata elected to estimate the CAFA jurisdictional amount based on waiting time penalties, wage statement penalties, and meal and rest break claims.  *See* Dkt. No. 1 at 8-9; Dkt. No. 14 at 5-9.  It also factors in an estimated 25% recovery for attorney's fees.  Dkt. No. 1 at 10; Dkt. No. 14 at 10.

The problem that pervades dnata's estimate for the amount in controversy is that it assumes unreasonably high rates of violations.  For example, dnata posits a 100% violation rate for each putative class member for the waiting time penalties.  *See* Dkt. No. 14 at 8 ("it is reasonable for dnata to assume that each of the 426 nonexempt employees who were terminated [during the class period] are entitled to waiting time penalties.").  It also assumes a 100% violation rate for the wage statement claims.  *See id.* at 9.  These two assumptions are essential to its jurisdictional argument, and together they account for the lion's share of dnata's estimate of the amount in controversy.  *See id*. at 10 (waiting time and wage statement penalties total $3,275,722.80).

To be sure, there are circumstances in which a 100% violation rate may be a reasonable proposition for CAFA removal purposes.  A defendant may adduce facts that plausibly support

such a rate, and the complaint itself may allege facts that make a 100% incident rate a reasonable inference.  *See Anderson*, 2020 WL 7779105 at *4 (complaint alleged mandatory practices applied to all employees).

None of that is present here.  dnata did not provide any extrinsic evidence independently validating a 100% violation rate.  Its main argument is that the complaint leaves no room for assuming less than 100%, *see* Dkt. No. 14 at 7-8, but that is rebutted by the plain language of the allegations.  Moore consistently alleges that dnata acted "at times" and "on occasion" in a manner that violated California state employment laws.  *See, e.g.,* Dkt. No. 1, Ex. A ¶¶ 12-17.  No numbers are attached to those qualifiers.  Moore also consistently alleges that the violations may have happened to only some of dnata's employees during the class period.  *Id.*

Overall, Moore alleges only that some class members suffered some violations at some time during the class period.  That is hardly grounds to infer a 100% violation rate for any of the claims.  It is true that Moore makes the occasional reference to a "common course of conduct" and "intentionally" adopted wage and hour policies, *see id.* ¶¶ 26, 63, but those passing comments do not dilute the complaint's overarching allegations of sporadic and intermittent practices.

dnata tries to defend its 100% assumptions by saying that other district courts have accepted that approach.  *See* Dkt. No. 14 at 7.  Even taking this representation at face value, it is of no help to dnata because CAFA removal must be based on the facts of each case, and dnata did not show that those cases presented allegations akin to the ones here, or involved a similar lack of material extrinsic evidence.  A good argument can also be made that those cases are out of step with recent decisions by the Ninth Circuit.  *See Ibarra v. Manheim*, 775 F.3d 1193, 1198-99 (9th Cir. 2015).[2]  dnata faults Moore for not providing "evidence" to counter the 100% violation rate assumption, Dkt. No. 14 at 8, but Moore was not required to do that.  *See Anderson*, 2020 WL 7779015 at * 2.  It was enough for him to rely on logic, fair inferences, and the allegations in the complaint, to critique dnata's arguments.

---

[2]  dnata says that the district court decisions it cites accepted a 100% violation rate "even after *Ibarra*," but *Ibarra* was published in 2015, and the district court decisions are from 2007 and 2010.  Dkt. No. 14 at 7.

dnata's efforts to bolster its amount in controversy argument with the meal and rest break allegations, and attorney's fees, are equally unavailing.  dnata rather randomly assumed a 20% meal and rest break violation rate, an assumption that is not tied to any evidence or the complaint, and appears to have been pulled out of thin air.  Dkt. No. 14 at 9.  Even spotting that figure the benefit of the doubt purely for the discussion here, it results in only approximately $1.5 million in penalties.  *Id.* at 10.  The estimated fees recovery of 25% is not inherently unreasonable, *see Anderson*, 2020 WL 7779015 at *4, but dnata applies it to the flawed waiting time and wage statement penalties, and so the amount attributed to fees cannot be used toward the jurisdictional threshold.  *See* Dkt. No. 14 at 10.  If the 25% were limited to the meal and rest break penalties, the total would still be well short of $5 million.

dnata had a full and fair opportunity to present evidence and arguments for removal under CAFA, and has come up short.  It has failed to plausibly demonstrate that this case reasonably puts $5 million or more into play.  Consequently, a remand on CAFA is warranted.

## II.     FEDERAL QUESTION REMOVAL

So too for dnata's alternative theory of removal on federal question subject matter jurisdiction.  As in all federal cases, the foundational principle here is that the jurisdiction of the federal courts is limited to what is authorized by the Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Removal is appropriate only when a case presents a federal question, or involves diversity of citizenship and meets the statutory amount in controversy. 28 U.S.C. §§ 1331, 1332.  There is a strong presumption against removal, and the removal statute is strictly construed against finding federal jurisdiction.  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).  Any doubts about the propriety of removal should be resolved in favor of a remand to state court.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  Principles of federalism, comity, and respect for the state courts also counsel strongly in favor of scrupulously confining removal jurisdiction to the precise limits that Congress has defined.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).  The defendant always bears the burden of demonstrating that removal was proper.  *Gaus*, 980 F.2d at 566.

dnata cites two CBAs that it says were in effect to argue for federal question removal on the basis of "complete preemption" of the California state law claims by Section 301 of the LMRA.  Dkt. No. 14 at 11.  Complete preemption "is actually a doctrine of jurisdiction and is not to be confused with ordinary preemption doctrine."  *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 n.7 (9th Cir. 2000).  "State law claims that are completely preempted are removable to federal court under the complete preemption corollary to the well-pleaded complaint rule."  *Garcia v. Service Employees International Union*, 993 F.3d 757, 762 (9th Cir. 2021) (citing *Caterpillar, Inc v. Williams*, 482 U.S. 386. 392-93 (1987)).  Section 301 of the LMRA "is one of just three federal statutes that the Supreme Court has held to 'so preempt their respective fields as to authorize removal of actions seeking relief exclusively under state law.'"  *Id*. (quoting *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005)).  State law claims within the purview of Section 301 are considered federal claims subject to removal.  *Id*.

"To determine whether any state law claim is preempted and removable, 'we need only inquire whether [the] claim arose under section 301.'"  *Id*. at 764 (quoting *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988)).  This is a two-step analysis that asks (1) whether the claim involves a right conferred by state law as opposed to a labor contract, and if so, (2) whether the claim "is 'nevertheless substantially dependent on an analysis' of a labor contract."  *Id*. (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr*., 832 F.3d 1024, 1032 (9th Cir. 2016) (internal citation omitted)).  For "complete preemption to apply, the need to interpret the [labor contract] must inhere in the nature of the plaintiff's claim."  *Id*. (internal quotation omitted).

dnata's showings on this point are paltry.  It does not dispute that Moore seeks to vindicate California state law rights, and not rights created solely by a CBA.  *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (regulating employee wages and hours, and related labor standards, "remains well within the traditional police powers of the states.") (internal quotation omitted).  Its main contention is that the claims substantially depend on an interpretation of the CBAs.  It devoted just one page to this issue in its opposition to the remand motion, and mentions only a "mandatory grievance procedure" in the agreements to conclude that the complaint "necessarily" arises from the agreements.  Dkt. No. 14 at 11-12.

1        This will not do to establish complete preemption.  Simply pointing to a grievance

2 procedure does not indicate that resolving the merits of Moore's state law claims will require the

3 interpretation of a CBA.  "Interpretation" in this context "is defined narrowly -- it means

4 something more than 'consider,' 'refer to,' or 'apply.'"  *Garcia*, 993 F.3d at 765 (quoting

5 *Balcorta*, 208 F.3d 1102, 1108 (9th Cir. 2000)).  It may be that the CBAs should be consulted

6 about grievance procedures, but "the bare fact that a [labor contract] will be consulted in the

7 course of the state-law litigation plainly does not require the claim to be extinguished." *Id.*

8 (internal quotation omitted).  "Congress did not intend to preempt state law claims simply because

9 they in some respect implicate CBA provisions, make reference to a CBA-defined right, or create

10 a state law cause of action factually 'parallel' to a grievable claim.  Rather, an application of state

11 law is preempted only if such application requires the interpretation of a collective-bargaining

12 agreement." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) (en banc) (cleaned

13 up).

14        Because dnata has not shown that an interpretation of a labor contract is necessary to

15 decide Moore's state law claims, complete preemption does not apply.  This same conclusion

16 applies to the CBA provisions mentioned in the notice of removal, which again indicate nothing

17 more than that the contracts may need to be consulted.  *See* Dkt. No. 1 at 13-14.  When, as here, a

18 claim does not substantially depend on an interpretation of a labor contract, "the claim can proceed

19 under state law." *Garcia*, 993 F.3d at 765 (internal quotation omitted).

20        dnata's suggestion that removal was proper under the RLA is also misplaced.  *See* Dkt. No.

21 14 at 11.  Although it is true that the substantive preemption standards are "virtually identical" for

22 the LMRA and RLA, "the one significant difference between RLA and LMRA § 301 preemption

23 is that, under our case law, the latter, but not the former, gives rise to federal court jurisdiction

24 under the 'complete preemption' doctrine." *Alaska Airlines*, 898 F.3d at 913 n.1 (quoting

25 *Caterpillar Inc.*, 482 U.S. at 393-94); *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d

26 1241, 1245-46 (RLA is not basis for complete preemption and "does not provide a federal cause of

27 action.") (internal quotation omitted).  Consequently, the RLA was not grounds for removal here.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The case was improperly removed under CAFA, and removed without jurisdiction under 28 U.S.C. § 1447(c).  It is remanded to the San Francisco Superior Court.

**IT IS SO ORDERED.**

Dated:  July 19, 2021

_____
JAMES DONATO
United States District Judge